IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PEMCO AEROPLEX, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CV 98-J-2584-S |
| ) | |
| WILLIAM S. COHEN, in his official ) | |
| capacity as Secretary of Defense; ) | |
| McDONALD DOUGLAS ) | |
| CORPORATION, et al., ) | |
| ) | |
| Defendants. ) | |

ENTERED
NOV 20 1998

## MEMORANDUM OF DECISION

This cause comes before this Court on several pending motions. They are McDonald Douglas Corporation's motion to intervene, Agency Defendants' motion to dismiss, McDonald Douglas's motion to dismiss, and Plaintiff's motion for a preliminary injunction. This Court has reviewed the parties' submissions along with the arguments and sworn testimony of witnesses presented during the one and one-half day hearing held by this Court on said motions. In accordance with this evidence and the ORDER entered this day, the Court enters this Memorandum of Decision.

32

I.      JURISDICTION

Jurisdiction is proper in this case pursuant to 28 U.S.C. §§ 1331 & 1491.

II.     FACTS

In 1995 the Base Realignment and Closure Commission ("BRAC") recommended the closure of McClellan Air Force Base ("McClellan"), California, and Kelly Air Force Base, Texas ("Kelly"). Also recommended for closure were the Sacramento Air Logistics Center ("SM-ALC") and the San Antonio Air Logistics Center ("SA-ALC"). These ALCs were located at McClellan and Kelly respectively. While BRAC had recommended closure of various bases, these two closures were unique. In 1995, the United State Air Force ("USAF") had five ALCs responsible for maintenance, parts, etc., for its air fleet. In 2001, when these two closures are scheduled to be completed, the USAF will have only three ALCs performing these functions. The remainder of the workload will be performed by private contractors. This lawsuit centers around the contracting processes involved in moving the McClellan/SM-ALC workload to the other ALCs and private industry.

In preparation for the closing of McClellan and SM-ALC, the USAF moved some of the McClellan workload to other USAF locations and prepared to move other portions to private industry. Many different operations were performed at McClellan prior to the recommendation to realign the base. Among the myriad of functions performed there

were de-paint/ paint operations on the A-10 attack plane, repair and maintenance on "commodities" (*i.e.,* spare parts used in airplanes), and programmed depot maintenance ("PDM") on the KC-135 aerial tanker. McClellan was the exclusive provider of commodities work for hydraulics, avionics and electronics. McClellan was also the only location that performed the A-10 work. The KC-135 work was performed at McClellan, Oklahoma City ALC at Tinker AFB, and Pemco Aeroplex, Inc. in Birmingham, Alabama. The KC-135 PDM portion of the McClellan workload is the basis of this suit.

Programmed depot maintenance ("PDM") is a process by which an airplane is essentially disassembled, worn parts repaired or replaced, and the aircraft reassembled. This maintenance process is crucial for the KC-135 fleet as Boeing ceased production of the plane in the mid-1960s making the newest of the fleet some thirty-plus years old.

Because PDM is so extensive, it is also highly lucrative for the performer of the work. Thus, when it became necessary to realign the McClellan workload, the KC-135 PDM was an appealing item for private contractors. Other portions of McClellan's workload, however, were not so appealing. The evidence showed that the commodities work generated very little interest. However, the commodities work must be realigned before McClellan can be closed. According to the USAF, it decided to "bundle" requests for proposals (RFPs) on the commodities, the KC-135 and the A-10 in an effort to generate competition for the commodities. James C. Barone, Executive Director of the

SM-ALC, testified that the consistent demand for the work on the KC-135 and A-10 would offset the unappealing aspects of the commodities work, thus enticing more bids from industry for all of these portions of the McClellan workload. This decision to bundle was made public in the summer of 1996.

The bidding competition for the McClellan workload was a "public-private" competition. Under this scenario, one public facility, Ogden ALC at Hill AFB, Utah, would compete like a private contractor for the McClellan workload. When Ogden was chosen as the public competitor, it conducted a competition of its own for "teaming partners." Ogden could not perform all of the bundled McClellan work. Thus, it sought proposals from companies that may want the KC-135 portion of the workload. From these proposals, Ogden would choose a teaming partner with whom to submit a package bid for the McClellan workload. Ogden's "Request for Teaming Partners", which serves as a Request for Proposals ("RFP"), was issued in January 1998. (*See* Agency Defendants' *in camera* submission of documents dated October 23, 1998, at pp. 58-59.) In response to this RFP, several companies submitted proposals to Ogden, including Pemco Aeroplex, Lockheed Martin and McDonald Douglas. On March 20, 1998, Ogden chose McDonald Douglas as a teaming partner. *(See* Defendant-Intervenor's Opposition to Plaintiffs' Motion to Temporarily Restrain and Enjoin Award and Performance of Contract at p. 5.) Lockheed Martin formed another team to bid on the McClellan workload. Pemco did not join another team.

When the RFP for the full McClellan workload was issued in March 1998, the KC-135 was bundled with the A-10 and the commodities. Ogden submitted its response to RFP as did Lockheed Martin. Pemco made a submission addressing its interest in and capability to do the KC-135 work alone. However, it is undisputed that Pemco's submission contained no prices or other specifics required for a formal "proposal." The USAF contends that Pemco's submission was "more a statement [that] 'we do KC-135 workload'" and that it did not respond to the RFP for all elements of the bundled workload. *(See* Testimony of James Barone.) After Pemco's submission was rejected by the USAF, Pemco filed a bid protest at the General Accounting Office ("GAO") two days before the deadline for filing such protests. After conducting hearings and assembling a voluminous record, the GAO concluded that the bundled Solicitation violated the Competition in Contracting Act (CICA) and 10 U.S.C. § 2469a. The GAO recommended that the USAF re-solicit the McClellan workload on an un-bundled basis. General Zettler testified that, after consulting with the Deputy Secretary of Defense and other high-ranking Defense Department officials, the USAF chose not to follow the GAO's recommendation. The USAF then awarded a contract for the McClellan workload to the Ogden/McDonald Douglas team.

Shortly thereafter, Pemco brought suit in this Court for injunctive relief and an order requiring the USAF to re-solicit the work. This Court has reviewed the submissions of the parties, heard the testimony of live witnesses, and conducted a hearing on several

motions including the motion for a preliminary injunction.

III.  McDONALD DOUGLAS'S MOTION TO INTERVENE

In logical order of relevance, this motion needs to be addressed first. Fed. R. Civ. P. 24(b) allows that anyone may be permitted to intervene in an action upon timely application "(2) when an applicant's claim or defense and the main action have a question of law or fact in common." As holder of the current rights to do the KC-135 PDM at the heart of this suit, McDonald Douglas seeks to assert defenses to Pemco's claims.

McDonald Douglas's interests are not perfectly aligned with those of the Agency Defendants and, therefore, are not adequately represented by other defense counsel. McDonald Douglas's defenses clearly have "a question of law or fact in common" with Pemco's claims. Thus, McDonald Douglas's motion to intervene is **GRANTED**.

IV  AGENCY DEFENDANTS' MOTION TO DISMISS FOR LACK OF STANDING

Plaintiff has standing in this case pursuant to the rationale expressed in *Hayes International Corporation v. McLucas*, 509 F.2d 247 (5th Cir. 1975)[1] and *Rapides Regional Medical Center v. Secretary, Department of Veterans' Affairs*, 974 F.2d 565 (5th

---

[1] Decisions issued by the United States Court of Appeals for the Fifth Circuit prior to October 1, 1981, are binding on this Court.

Cir. 1992).

Thus, the Agency Defendants' motion to dismiss for lack of standing is **DENIED**.

V.   McDONALD DOUGLAS'S MOTION TO DISMISS COUNTS I & II OF THE PLAINTIFF'S COMPLAINT

McDonald Douglas argues that this Court's jurisdiction to review the bundled solicitation is limited to review under the Administrative Procedures Act ("APA"). More specifically, McDonald Douglas argues that the CICA and 10 U.S.C. § 2469a are not statutes that this Court has the power to enforce against the USAF.

On the contrary, the APA provides:

> To the extent necessary to decision and when presented, the reviewing court shall decide *all relevant questions of law, interpret* constitutional and *statutory provisions*, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall –
> ...
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be –
> > (A) arbitrary, capricious, an abuse of discretion, or *otherwise not in accordance with law*;
> > ...
> > (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> > (D) without observance of procedure required by law;
> > ....

5 U.S.C. § 706 (emphasis added). The plain meaning of the APA requires this court to address the relevant statutory provisions in reviewing agency action. In this case, those

provisions include 10 U.S.C. § 2469a and the CICA.

Thus, Defendant McDonald Douglas's motion to dismiss counts I & II is **DENIED**.

VI.     MOTION FOR A PRELIMINARY INJUNCTION

The standards for issuance of a preliminary injunction in this circuit are clear. Plaintiff must demonstrate: "(1) a substantial likelihood that [it] will ultimately prevail on the merits; (2) a showing that [it] will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to [it] outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest." *T.J. Cunningham v. Adams*, 808 F.2d 815, 819 (11th Cir. 1987) (citations omitted).

This Court first addresses the required showing that Plaintiff will suffer an irreparable injury *unless the injunction issue*. Such a showing would necessarily demonstrate that the issuance of a preliminary injunction would terminate the threat of irreparable injury during the pendency of the case on the merits.

In the absence of an injunction, the USAF plans to begin delivery of KC-135s to McDonald Douglas on or before November 24, 1998, for PDM work. Pemco argues that delivery to McDonald Douglas will cause them irreparable harm in two ways.

First, Pemco argues that any KC-135 on which McDonald Douglas performs PDM

is one that Pemco cannot receive in fiscal year 1999 ("FY99") under its existing contract with the USAF. The evidence before this Court indicates that Pemco would be unable to receive these KC-135s regardless of the issuance of a preliminary injunction. PDM is a pre-planned event in the life of an airplane. Thus, the USAF determines years in advance which planes are to be serviced at which locations. Currently, there are three locations for PDM service on KC-135s – Pemco, McClellan, and the Oklahoma City ALC. McClellan and Oklahoma City are government-owned or "public" facilities. Pemco is a private contractor. Pemco's existing contract with the USAF was renewed in September 1998 for FY99. Pursuant to this existing contract, Pemco has been designated 37 *specific* KC-135s for FY99. *(See* Plaintiff's Exhibit Y, filed under seal.) McClellan has been designated 15 *specific* KC135s for FY99. In the absence of an injunction, the fifteen KC-135s designated for McClellan will be re-routed to McDonald Douglas. While an injunction would prevent McDonald Douglas's receipt of KC-135s designated for McClellan, it would not assure that Pemco would receive any of those planes under Pemco's current contract with the USAF.

It is true that Pemco's current contract has a ceiling which is high enough to accommodate the McClellan FY99 KC-135 workload in addition to those planes already scheduled for PDM at Pemco. However, Air Force General Zettler testified under oath that it was his understanding that Pemco's status as a private contractor would prevent simply re-routing to Pemco any KC-135s designated for McClellan. He further testified

that he understood that any re-routing from a public to a private facility must go through an open bidding process. General Zettler went on to testify unequivocally that none of the McClellan KC-135s would be re-routed to Pemco under their current contract with the government *even if a preliminary injunction were issued*. Therefore, in the face of a preliminary injunction, the McClellan KC-135s would have to remain at McClellan or move to Oklahoma City. There was no scenario presented to this Court under which Pemco would receive any additional KC-135s from the McClellan workload during the period of a preliminary injunction.

Pemco considers its inability to receive any KC-135s from the McClellan workload in FY99 an irreparable injury. Even if this Court were to agree that said inability constituted an irreparable injury, the issuance of a preliminary injunction by this Court could not prevent that result. Thus, there is no showing that Plaintiff will suffer an irreparable injury *unless the injunction issue*.

Pemco alleges that it will suffer a second "irreparable injury" in absence of a preliminary injunction. According to Pemco, if this Court does not issue a preliminary injunction and later rules for Plaintiff on the merits, the KC-135 work done by McDonald Douglas in the interim will be lost to Pemco. Pemco would be unable to bid on this work once McDonald Douglas has undertaken and/or completed it. This argument is based upon the theory that a ruling for Plaintiff on the merits would allow re-solicitation of the McClellan workload in time for a new, un-bundled award to be made before the end of

FY99. This simply is an impractical, if not impossible, assertion.

Even if this Court ultimately rules that the bundled solicitation violated the CICA and 10 U.S.C. § 2469a and orders an un-bundled re-solicitation, the evidence demonstrates that there is no feasible way that the government can terminate its current contract for the McClellan workload, un-bundle the work, re-solicit each component of the work and award new contracts all prior to October 1, 1999.

Pemco considers its inability to bid on the KC-135s from the McClellan workload an irreparable injury. However, even if this Court ultimately finds for the Plaintiff on the merits, the workload on which Pemco would then have the ability to bid would, as a practical matter, have to begin in FY00. There is nothing the issuance of a preliminary injunction at this time can do to prevent what Pemco alleges is "irreparable injury". Thus, there is no showing that Plaintiff will suffer an irreparable injury *unless the injunction issue*.

Since Plaintiff has failed to meet the threshold of proof on the "irreparable injury" prong of the test for a preliminary injunction, it is unnecessary for this Court to address the other three prongs of the test. Plaintiff's motion for a preliminary injunction is **DENIED**.


VII. CONCLUSION

Thus, in accordance with the ORDER entered this day, McDonald Douglas's

motion to intervene is **GRANTED**; the Agency Defendants's motion to dismiss is **DENIED**; McDonald Douglas's motion to dismiss counts I & II of the complaint is **DENIED**; and Plaintiff's motion for a preliminary injunction is **DENIED**.

DONE and ORDERED this the __19__ day of November, 1998.

*/s/ Inge P. Johnson*
Inge P. Johnson
United States District Judge